## Office of Disciplinary Counsel v. James

Disciplinary Board Docket no. 120 D.B. 2005.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SAIDIS, *Panel Chair,* November 4, 2005—

### RECOMMENDATION OF THREE-MEMBER PANEL OF THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA

The three-member panel of the Disciplinary Board of the Supreme Court of Pennsylvania, consisting of Board Members Robert C. Saidis, Gary G. Gentile and Smith Barton Gephart has reviewed the joint petition in support of discipline on consent filed in the above-captioned matter on October 17, 2005.

The panel approves the joint petition consenting to an 18-month suspension from the practice of law and re-

quired restitution of $1,017 to Darlene Price and $950 to Allen B. Diggs within 30 days of the date of the order and recommends to the Supreme Court of Pennsylvania that the attached joint petition be granted.

The panel further recommends that any necessary expenses incurred in the investigation and prosecution of this matter shall be paid by the respondent-attorney as a condition to the grant of the petition.

---

## JOINT PETITION IN SUPPORT OF DISCIPLINE ON CONSENT UNDER RULE 215(d), Pa.R.D.E.

Petitioner, Office of Disciplinary Counsel, by Paul J. Killion, Chief Disciplinary Counsel, and Cathy Young Thomer, Disciplinary Counsel, and respondent, Janeane Michelle James, by Samuel C. Stretton, Esquire, file this joint petition in support of discipline on consent under Rule 215(d) of the Pennsylvania Rules of Disciplinary Enforcement and respectfully represent that:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania 17101, is vested, pursuant to Pa.R.D.E. 207 with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, Janeane Michelle James, was born on February 17, 1967, and was admitted to practice law in the Commonwealth of Pennsylvania on August 20, 1998.

According to attorney registration records, respondent's office is located at 63 Prospect Avenue, Bryn Mawr, Pennsylvania 19010-2604 (Bryn Mawr address), and, therefore, she is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(3) Petitioner filed a petition for discipline against respondent with the Secretary of the Disciplinary Board on August 9, 2005. On August 16, 2005, Robert Rancitelli, Investigator, District I Office, personally served the petition for discipline with notice to plead at the office of Samuel C. Stretton, Esquire, counsel for respondent. On August 26, 2005, respondent filed an answer to the petition for discipline with the Secretary's office.

(4) A Hearing Committee had not yet been appointed by the Secretary's office.

## SPECIFIC FACTUAL ADMISSIONS AND RULES OF PROFESSIONAL CONDUCT VIOLATED

(5) Respondent stipulates that the following facts are true and correct and that she violated the Rule of Professional Conduct and Rules of Disciplinary Enforcement set forth in paragraph 74, *infra.*

### A. *Background: Transfer to Inactive Status Pursuant to Pa.R.D.E. 219(a)*

(6) By order of the Supreme Court of Pennsylvania, dated November 1, 2002, effective December 1, 2002, respondent was transferred to inactive status for failure to pay her attorney registration fee pursuant to Pa.R.D.E. 219(a).

(7) Between May 15, 2002 and November 1, 2002, the Attorney Registrar and/or Secretary of the Disciplinary Board made not less than four attempts, as detailed in paragraphs 9 through 16, *infra,* to provide respondent with notice of her attorney registration fee requirements above and beyond the notice provided by Pa.R.D.E. 219 itself.

(8) Before the effective date of respondent's transfer to inactive status, respondent received actual notice that she was noncompliant with the attorney registration requirements set forth in Pa.R.D.E. 219.

(9) On or about May 15, 2002, respondent's 2002-2003 PA Attorney's Annual Fee Form was sent to respondent at "1218 Chestnut St., Ste. 1009, Philadelphia, PA 19107" (Philadelphia address).

(10) Respondent received the annual fee form.

(11) On or about August 7, 2002, a post card reminder was sent to respondent reminding respondent that she did not pay her attorney registration fee or file her annual fee form for 2002-2003.

(12) Respondent received the post card reminder.

(13) On or about September 1, 2002, a final notice was sent by certified mail return receipt requested to respondent at her Philadelphia address again reminding respondent that she did not pay her attorney registration fee or file her annual fee form for 2002-2003.

(14) Respondent received the final notice.

(15) In and under cover of a letter dated November 1, 2002, addressed to respondent at her Philadelphia address and sent by certified mail return receipt requested, Elaine M. Bixler, Secretary to the Disciplinary Board:

(a) forwarded to respondent a copy of the order transferring her to inactive status;

(b) forwarded to respondent copies of Rule 217 and Rule 219 of the Pennsylvania Rules of Disciplinary Enforcement; subchapter E, Formerly Admitted Attorneys, of the Disciplinary Board Rules; and the Standard Guidance of the Disciplinary Board to Lawyers who have been Transferred to Inactive Status;

(c) forwarded to respondent Form DB-23(i), Nonlitigation notice of transfer to inactive status;

(d) forwarded to respondent Form DB-24(i), Litigation notice of transfer to inactive status;

(e) forwarded to respondent Form DB-25(i), Statement of compliance; and

(f) informed respondent that in order to resume active status, she would be required to comply with the Pennsylvania Rules of Disciplinary Enforcement and Disciplinary Board Rules.

(16) Respondent did not claim the November 1, 2002 letter even though the United States Postal Service left not less than three notices.

(17) Respondent failed to pay her attorney annual fee and file her annual fee form.

### B. *Background: Transfer to Inactive Status Pursuant to Pa.R.C.L.E. 111(b)*

(18) By order of the Supreme Court of Pennsylvania, dated November 14, 2002, effective December 14, 2002, respondent was transferred to inactive status pursuant to Rule 111(b), Pa.R.C.L.E., for failure to satisfy the Con-

tinuing Legal Education (CLE) requirements for her compliance period.

(19) Prior to being transferred to inactive status, the Supreme Court of Pennsylvania Continuing Legal Education Board assigned respondent to Compliance Group 1, whose compliance period runs from May 1 through April 30 of the following year.

(20) Between February 1, 2002 and November 14, 2002, the CLE Board and/or Disciplinary Board Secretary made not less than five attempts, as detailed in paragraphs 22 through 32, *infra,* to provide respondent with notice of her CLE requirements above and beyond the notice provided by the Pennsylvania Rules for Continuing Legal Education and the Pennsylvania Continuing Legal Education Board Regulations.

(21) Before the effective date of respondent's transfer to inactive status, respondent received actual notice that she was noncompliant with her CLE requirements.

(22) In and under cover of a letter dated February 1, 2002, addressed to respondent at her Philadelphia address and titled "Preliminary Annual CLE Report," the CLE Board:

(a) forwarded to respondent a "Supreme Court of Pennsylvania Continuing Legal Education Board Course Attendance Record Preliminary" form that, inter alia, lists one course, "Trial Advocacy-Child Advocates," course date of 12/11/01, and total credits of "3.0S" (three substantive credit hours) and states that requirements were met for years 04/30/1999, 04/30/2000, and 04/30/2001, and requirements were not met for year 04/30/2002;

(b) represented that this letter/report was sent to respondent "to remind [her] of [her] Pennsylvania Con-

tinuing Legal Education (PACLE) requirements, to inform [her] of the status of [her] course attendance record, and to provide [her] ample time to complete [her] requirements if [she has] not already done so"; and

(c) represented that "lawyers who have not completed the requirements for compliance or been granted an approved extension will be considered noncompliant, assessed a $100 late fee, and subject to Pa.R.C.L.E. 111."

(23) Respondent received the CLE Board's February 1, 2002 correspondence and enclosure.

(24) The Supreme Court of Pennsylvania Continuing Legal Education Board Course Attendance Record Preliminary was accurate in all respects including the fact that respondent attended only one CLE course on Trial Advocacy-Child Advocates eligible for three PA CLE credits, which was credited toward respondent's CLE compliance period ending April 30, 2002.

(25) In and under cover of a letter dated June 21, 2002, addressed to respondent at her Philadelphia address, the CLE Board:

(a) represented that "[respondent] did not complete sufficient hours by [her] compliance deadline," and was *"Noncompliant with [her] CLE requirements"* (emphasis and second emphasis in original);

(b) represented that "section 8(B) of the regulations for Pennsylvania CLE provides for a period of 60 days from the date of this notice to complete the required hours or receive an approved exception as well as pay any required fees which have been assessed";

(c) represented that "[a]fter the expiration of 90 days from the date of this notice, which allows providers an

additional 30 days to report courses taken, PACLE will prepare a list of those lawyers who continue to be noncompliant and assess them an additional $100 late fee," and that "[t]his list will be sent to the Supreme Court of Pennsylvania with the recommendation that those lawyers be involuntarily inactivated for noncompliance";

(d) forwarded to respondent a Supreme Court of Pennsylvania Continuing Legal Education Board Course Attendance Record-Compliance Year End report, which contained the same information as listed in paragraph 22(a), *supra;* and

(e) forwarded to respondent an invoice for "Initial Late Fee For Noncompliance."

(26) Respondent received the June 21, 2002 notice and enclosures.

(27) In and under cover of a letter dated October 1, 2002, addressed to respondent at her Philadelphia address, the CLE Board:

(a) forwarded to respondent an invoice for "Initial Late Fee For Noncompliance";

(b) forwarded to respondent an invoice for "Second Late Fee For Continued Noncompliance";

(c) represented that the "process of preparing the list of names of *noncompliant* attorneys for submission to the *Pennsylvania Supreme Court* is nearing completion" (emphasis in original);

(d) represented that if "[respondent] fail[ed] to comply with the PACLE Rules and Regulations within the additional time provided, the Supreme Court will enter an order to involuntarily inactivate [respondent's] license"; and

(e) represented that once "the Supreme Court order is issued, in order to return to an active status, a non-compliant attorney must complete the then current year's requirement and any unfulfilled requirements from the preceding two compliance years, pay the $100 initial late compliance fee, the $100 second late compliance fee, and the $100 reinstatement fee if not previously paid."

(28) Respondent received the October 1, 2002 notice and enclosures.

(29) In and under cover of letters dated November 14, 2002, addressed to respondent at her Philadelphia address and Bryn Mawr address, and sent by certified mail return receipt requested, Elaine M. Bixler, Secretary to the Disciplinary Board:

(a) informed respondent that the Supreme Court of Pennsylvania has forwarded to the Disciplinary Board "a certified copy of order of the court dated November 14, 2002 (copy enclosed together with applicable page containing [respondent's] name, that [she] will be *TRANSFERRED TO INACTIVE STATUS* EFFECTIVE *December 14, 2002,* for failure to comply with the Pennsylvania Rules for Continuing Legal Education due April 30, 2002 (for Compliance Group 1)" (emphasis and second emphasis in original);

(b) represented that in order to resume active status, respondent will be required to comply with the CLE Board before a request for reinstatement to the Disciplinary Board will be considered; and

(c) forwarded a letter prepared by the CLE Board which provides information regarding compliance with Rule 111(b), Pa.C.L.E.

(30) Respondent received Ms. Bixler's November 14, 2002 letter and enclosures.

(31) In and under cover of a letter dated November 14, 2002, addressed to respondent at her Philadelphia address, the CLE Board:

(a) forwarded to respondent a copy of the Disciplinary Board's November 14, 2002 letter identified in paragraph 29, *supra;*

(b) informed respondent that she is to be "transferred to inactive status for failure to comply with the Pennsylvania Rules for Continuing Legal Education";

(c) forwarded to respondent a Reinstatement Processing Fee invoice;

(d) forwarded to respondent Non-Resident Active Status Compliance Year Ending In 2002 form;

(e) represented that in order for respondent to be "considered in compliance with the Pennsylvania CLE rules and regulations, the following requirements must be completed *and* submitted to the PACLE office prior to [their] *final processing* date of *December 12, 2002*" (emphasis and second emphasis in original);

(f) represented that the requirements for compliance were to complete any deficiencies in PACLE credits, pay a $100 reinstatement processing fee; pay a $100 initial late compliance fee, and pay a $100 second late compliance fee; and

(g) represented that "[o]nce the order becomes effective, only verified attendance with sufficient hours from approved CLE activities will be accepted for reinstatement."

(32) Respondent received the November 14, 2002 notice and enclosures.

(33) Respondent failed to take the courses necessary to comply with the CLE Board's requirements.

(34) Respondent had prior knowledge that the only way that she could cure her non-compliant status was to take the courses necessary to bring her into compliance with the CLE Board's requirements.

(a) On June 22, 2001, the CLE Board notified respondent that she was non-compliant with her CLE requirements for the 2001 compliance year ending April 30, 2001.

(b) On August 21, 2001, respondent cured her non-compliance with the CLE requirements by attending a six-credit CLE course titled Bankruptcy Institute.

(35) By letter to respondent dated January 30, 2004, addressed to respondent at her Bryn Mawr address, the CLE Board represented that PACLE records indicate that respondent's status for the April 30, 2004 compliance year is *"INACTIVE"* (emphasis and second emphasis in original).

(36) Respondent received the January 30, 2004 letter.

(37) Respondent responded to the CLE Board's January 30, 2004 notice by making a request of the CLE Board that she be reinstated.

(38) By letter dated April 7, 2004, addressed to respondent at her Bryn Mawr address, the CLE Board:

(a) confirmed that the CLE Board was in receipt of respondent's request for reinstatement;

(b) represented that in order for respondent to certify her compliance to the Disciplinary Board of the Supreme Court, respondent must:

(i) complete the still owing CLE requirements for compliance year 2002, consisting of 1.0 ethics and 8.0 substantive law credits;

(ii) complete the requirements for compliance year 2003, consisting of 1.0 ethics and 11.0 substantive law credits; and

(iii) complete the CLE requirements for compliance year 2004, consisting of 1.0 ethics and 11.0 substantive law credits; and

(iv) pay $300—initial late, second and reinstatement fees; and

(c) represented that if respondent was not reinstated by April 30, 2004, respondent "must complete the then-current year and past two year's requirements before the [respondent's] reinstatement procedure will begin."

(39) Respondent received the April 7, 2004 notice.

(40) In and under cover of a letter dated July 14, 2004, addressed to respondent at her Bryn Mawr address, the CLE Board:

(a) represented that their records "indicate that additional hours have been reported";

(b) forwarded to respondent a Supreme Court of Pennsylvania Continuing Legal Education Board report showing additional credit hours of 4.0 substantive law credits for a course titled Taking and Defending Depositions, attended on June 17, 2004; and

(c) represented that in order for respondent to certify her compliance to the Disciplinary Board of the Supreme Court, respondent must:

(i) complete the still owing CLE requirements for compliance year 2003, consisting of 1.0 ethics and 4.0 substantive law credits;

(ii) complete the requirements for compliance year 2004, consisting of 1.0 ethics and 11.0 substantive law credits;

(iii) complete the CLE requirements for compliance year 2005, consisting of 1.0 ethics and 11.0 substantive law credits; and

(iv) pay $300—initial late, second and reinstatement fees.

(41) Respondent received the July 14, 2004 notice and enclosure.

(42) Respondent engaged in activities that constituted the unauthorized practice of law by representing four clients in civil and transactional matters while on inactive status, as set forth below, and respondent provided her legal services without being under the direct supervision of a member in good standing of the bar of this Commonwealth, as required by Pa.R.D.E. 217(j)(1).

## C. The Horsey Matter (File No. C1-04-29)

(43) In October 2003, Clifton Horsey contacted respondent to handle a civil matter regarding a burglary and the vandalism of his residence.

(44) Respondent failed to inform Mr. Horsey that she was on inactive status and not permitted to practice law.

(45) On October 23, 2003, respondent agreed to represent Mr. Horsey.

(46) Mr. Horsey paid respondent $500 by money order dated November 13, 2003.

(a) Respondent deposited that money order into an account, no. **********, at PNC Bank.

(47) Respondent drafted a complaint in Mr. Horsey's matter and advised Mr. Horsey that:

(a) she needed to meet with him to review the complaint; and

(b) she needed to obtain Mr. Horsey's signature on the verification.

(48) Respondent made an appointment to meet with Mr. Horsey, and Mr. Horsey did not keep the appointment.

(49) Respondent never met with Mr. Horsey; therefore, the complaint was not filed.

(50) Respondent engaged in the unauthorized practice of law during her representation of Mr. Horsey.

(51) Respondent's practice of law in Pennsylvania was illegal and in contempt of the orders of the Supreme Court of Pennsylvania transferring respondent to inactive status.

### D. *The Jones Matter (File No. C1-04-218)*

(52) In or around July 2003, respondent met with McKay Jones, and Mr. Jones retained respondent to assist him in transferring a deed, updating his will and his wife's will, and drafting living wills for both him and his wife.

(53) Respondent failed to inform Mr. Jones that she was on inactive status and not permitted to practice law.

(54) Respondent informed Mr. Jones that respondent's fee to complete the real estate transaction would be $125, and that Mr. Jones would have to pay the filing fee and transfer tax.

(55) Mr. Jones paid to respondent:

(a) $125 by personal check that bore the memo "for deed transfer"; and

(b) $422.32, also by personal check, that bore the memo "for transfer tax on 2814 N. Broad St. and other fees."

(56) Respondent deposited both checks into an account, no. **********, at PNC Bank.

(57) Respondent prepared the deed for transfer but did not file the deed.

(58) Respondent revised Mr. Jones' will and Mrs. Jones' will, but the wills were not executed.

(59) Respondent prepared living wills for Mr. and Mrs. Jones, but the living wills were not executed.

(60) Respondent engaged in the unauthorized practice of law during her representation of Mr. Jones.

(61) Respondent's practice of law in Pennsylvania was illegal and in contempt of the orders of the Supreme Court of Pennsylvania transferring respondent to inactive status.

E. *The Price Matter (File No. C1-05-819)*

(62) In October 2001, Darlene Price contacted respondent regarding drafting and filing articles of incorporation for several businesses.

(63) Ms. Price paid respondent $950 by check dated October 31, 2001.

(a) Respondent deposited that check into an account, no. *************, at First Union National Bank.

(64) Respondent did not draft or file the articles of incorporation for Ms. Price's businesses.

(65) Ms. Price filed in Philadelphia Municipal Court a small claims complaint against respondent for the $950 unearned fee.

(66) On June 2, 2005, respondent appeared at a mediation hearing, during which respondent signed a mediation judgment by agreement to pay Ms. Price $1,017 no later than June 23, 2005.

(67) Respondent failed to pay Ms. Price $1,017 as agreed.

F. *The Diggs Matter (File No. C1-05-920)*

(68) In September 2004 (six months after respondent received notice via DB-7 letter in C1-04-29 and C1-04-218 that she was inactive and had engaged in the unauthorized practice of law), Allen B. Diggs contacted respondent regarding various filings to the State of Pennsylvania and the federal government concerning a 501(c)(3) corporation.

(69) Respondent failed to inform Mr. Diggs that she was on inactive status and not permitted to practice law.

(70) Mr. Diggs paid respondent $375 by check dated September 20, 2004.

(a) Respondent deposited that check into account no. ********** at PNC Bank.

(71) Respondent agreed to represent Mr. Diggs and collected a fee.

(72) Respondent did not perform any services for Mr. Diggs.

(73) Respondent did not return to Mr. Diggs the $375 in unearned fees.

(74) Respondent admits that by her conduct as detailed in paragraphs 43 through 73 above, she violated Rule of Professional Conduct 5.5(b) (adopted 10/16/87, revised and renumbered R.P.C. 5.5(a) effective 5/15/04) (a lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction); and Pa.R.D.E. 203(b)(3) (it is grounds for discipline for a lawyer to willfully violate any other provision of the Enforcement Rules) via Pa.R.D.E. 217(j)(2) (the only law-related activities permitted to be conducted by a formerly admitted attorney under the direct supervision of a member in good standing of the bar of this Commonwealth are those set forth in Pa.R.D.E. 217(j)(2)(i)-(iii)).

## SPECIFIC JOINT RECOMMENDATION FOR DISCIPLINE

(75) Petitioner and respondent jointly recommend that the appropriate discipline for respondent's admitted misconduct is a suspension from the practice of law for a period of 18 months.

(76) Respondent hereby consents to that discipline being imposed upon her by the Supreme Court of Pennsylvania. Attached to this petition is respondent's executed affidavit required by Rule 215(d), Pa.R.D.E., stating that she consents to the recommended discipline and including the mandatory acknowledgements contained in Rule 215(d)(1) through (4), Pa.R.D.E.

(77) In support of petitioner and respondent's joint recommendation, it is respectfully submitted that:

(a) There are several mitigating circumstances:

(i) Respondent has admitted engaging in misconduct and violating the charged Rules of Professional Conduct;

(ii) Respondent has cooperated with petitioner, as is evidenced by respondent's admissions herein and her consent to receiving a suspension of 18 months;

(iii) Respondent has no prior disciplinary history; and

(iv) Respondent was going through a difficult pregnancy during the time periods that she was transferred to inactive status.

(b) In addition, there are aggravating factors:

(i) Respondent engaged in a pattern of misconduct;

(ii) Respondent undertook the representation in the Diggs matter six months after receiving notice that ODC was investigating charges against her for the unauthorized practice of law; and

(iii) Respondent failed to return unearned fees to Mr. Diggs and to Ms. Price in accordance with the June 2, 2005 mediation judgment by agreement.

(78) In a recent Disciplinary Board report, the Disciplinary Board recognized that the Supreme Court of Pennsylvania has recently established a line of cases indicating that the appropriate sanction for a lawyer practicing while on inactive status is suspension for one year and one day. *Office of Disciplinary Counsel v. Goldin-Didinsky,* 87 D.B. 2003, D.Bd. Rpt. 8/27/04 p. 13 (S.Ct. order 12/13/04). (citing cases) Just recently, the Pennsylvania Supreme Court suspended, for one year and one day, an attorney who, while on CLE inactive status, engaged in the unauthorized practice of law by filing four matters in the Chester County Court of Common Pleas and two matters in the Eastern District of Pennsylvania while unaware of what effect his inactive status had on his ability to practice law in federal court. *Office of Disciplinary Counsel v. Ferleger, Nos. 104 D.B. 2004 and 51 D.B. 2004,* 2005 WL 2219317 (Pa. Aug. 3, 2005). Respondent's pattern of collecting fees and failing to perform any legal work; failing to return unearned fees; and agreeing to represent a client and accepting a fee six months after she was put on notice that ODC was conducting an investigation regarding respondent's engaging in the unauthorized practice of law, support a suspension of 18 months.

Wherefore, petitioner and respondent respectfully request that:

(a) Pursuant to Rule 215(e) and 215(g), Pa.R.D.E., the three-member panel of the Disciplinary Board review and approve the above joint petition in support of discipline on consent and file its recommendation with the Supreme Court of Pennsylvania in which it is recommended the Supreme Court enter an order:

(i) suspending respondent from the practice of law for a period of 18 months;

(ii) directing respondent to make restitution of $1,017 to Ms. Price and $950 to Mr. Diggs within 30 days of the date of the order; and

(ii) directing respondent to comply with all of the provisions of Rule 217, Pa.R.D.E.

(b) Pursuant to Rule 215(i), the three-member panel of the Disciplinary Board order respondent to pay the necessary expenses incurred in the investigation of this matter as a condition to the grant of the petition and that all expenses be paid by respondent before the imposition of discipline under Rule 215(g), Pa.R.D.E.

---

## VERIFICATION

The statements contained in the foregoing joint petition in support of discipline on consent under Rule 215(d), Pa.R.D.E. are true and correct to the best of our knowledge, information and belief and are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.

### AFFIDAVIT UNDER RULE 215(d), Pa.R.D.E.

Respondent, Janeane Michelle James, hereby states that she consents to the imposition of a suspension from the practice of law for a period of 18 months, as jointly recommended by petitioner, Office of Disciplinary Counsel, and respondent in the joint petition in support of discipline on consent and further states that:

(1) Her consent is freely and voluntarily rendered; she is not being subjected to coercion or duress; she is fully aware of the implications of submitting the consent; and she has consulted with counsel in connection with the decision to consent to discipline;

(2) She is aware that there is presently pending a proceeding involving allegations that she has been guilty of misconduct as set forth in the joint petition;

(3) She acknowledges that the material facts set forth in the joint petition are true; and

(4) She consents because she knows that if the charges pending against her continue to be prosecuted in the pending proceeding, she could not successfully defend against them.

## ORDER

And now, January 5, 2006, upon consideration of the recommendation of the three-member panel of the Disciplinary Board dated November 4, 2005, the joint petition in support of discipline on consent is hereby granted in accordance with Rule 215(g), Pa.R.D.E., and it is ordered that Janeane Michelle James is suspended on consent from the bar of this Commonwealth for a period of 18 months, and she shall comply with all provisions of Rule 217, Pa.R.D.E.

Respondent is further directed to make restitution of $1,017 to Darlene Price and $950 to Allen B. Diggs within 30 days from the date of this order.

Former Justice Nigro did not participate in this matter.